IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SUNITA KULSHRESTHA, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 1:23-CV-00042-TSE-IDD |
| ) | |
| SHADY GROVE REPRODUCTIVE ) | |
| SCIENCE CENTER, P.C., ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS, OR, IN ALTERNATIVE, TO TRANSFER VENUE TO THE DISTRICT OF MARYLAND

NOW COMES the plaintiff, Sunita Kulshrestha, M.D. ("Plaintiff" or "Dr. Kulshrestha"), by and through her undersigned counsel, and for her Memorandum in Opposition to the defendant, Shady Grove Reproductive Science Center, P.C. ("Defendant" or "Shady Grove")'s, Partial Motion to Dismiss, or in Alternative, to Transfer Venue to the District of Maryland, states as follows:

### BACKGROUND

Plaintiff, who is a board certified physician in the field of obstetrics and gynecology, was approached by Defendant in 2013 to recruit her to join Shady Grove Fertility ("SGF"). (Compl. ¶ 8-10). Defendant lured Plaintiff to join SGF with the false promise that all physicians at SGF eventually become partners and that the Defendant supported its physicians in reaching that goal. (Compl. ¶ 12).

As a result of Defendant's false assurances, Plaintiff and Defendant entered into a Physician Employment Agreement (the "Employment Agreement") on January 15, 2014. (Compl. ¶ 14). Pursuant to Section 9 of the Employment Agreement, the Agreement had an initial term of six (6) months, but "shall be extended automatically each year, unless 180 days prior notice not to renew is given by either party, for a period of four (4) years, on the same terms and conditions…" (Compl. ¶ 17). The Employment Agreement also required Defendant to pay Plaintiff $30,000 per year under its Retirement (Defined Benefit) Plan. (Compl. ¶ 17). Despite its contractual obligation, Defendant failed to pay Plaintiff this $30,000 in 2017 and again in 2018. (Compl. ¶ 18).

Under the Employment Agreement, Plaintiff initially began seeing patients at Defendant's offices in Chesterbrook and Bala Cynwood in the Philadelphia, Pennsylvania area where she could wait out the end of her previous employer's restrictive covenant. (Compl. ¶ 15). In March of 2017, Plaintiff moved back to Virginia and began servicing Defendant's patients at its Waldorf, Maryland location, as well as its location in Fairfax County, Virginia. (Compl. ¶ 19). The parties never executed any other contracts reflecting this change. (Compl. ¶ 20).

In August of 2021, Plaintiff requested that she be able to do telemedicine appointments from her home in Virginia for a short period of time due to her elderly mother's declining health and the ongoing pandemic. (Compl. ¶ 30). In addition to caring for her mother, Plaintiff was also caring for her elderly mother-in-law, as well as taking care of a toddler. (Compl. ¶ 27). Despite these extra challenges at home, Plaintiff's performance at SGF never faltered and continued to exceed Defendant's expectations. (Compl. ¶ 27). On August 23, 2021, Plaintiff had a zoom call with Defendant's Regional Executive Director, Amy Davis, as well as other attendees, where this request was discussed. (Compl ¶. 31). When Plaintiff asked about taking FMLA leave, Ms. Davis expressed concern that Plaintiff was "doing three full-time jobs at once…mom to a fifteen-month-

old, caregiver to [her] mother, and full-time physician." (Compl. ¶ 33). Plaintiff then asked Ms. Davis if she was being treated differently on the basis of her gender and caregiver status, which would be in violation of state, local, and federal employment laws. (Compl. ¶ 34).

On August 30, 2021, one week after Plaintiff engaged in protective activity by seeking FMLA leave, Ms. Davis and the head of human resources for Defendant's management company, Randy Ammons, notified Plaintiff that Defendant would be terminating her employment on February 27, 2022 because she was "not a good fit" and that this termination was "without cause." (Compl. ¶¶ 35-36). Even though Plaintiff's employment would not technically terminate until February of 2022, in October of 2021, Plaintiff became aware that Defendant's agents were telling patients, fellow employees, and other colleagues in reproductive medicine that Plaintiff had retired from SGF. (Compl. ¶ 39). As of the filing of the Complaint, and continuing to today, Defendant's website maintains a web page featuring Plaintiff, which states the following:

> Effective October 8, 2021, Sunita Kulshrestha, M.D., has retired from Shady Grove Fertility. The Waldorf office is actively directing the facilitation of Dr. Kulshrestha's current and former patient care. For any questions or concerns, contact the Waldorf office at 301-705-9923.

(Compl. ¶ 41). Defendant's false statements that Plaintiff has retired from the practice of medicine have prevented Plaintiff from finding other jobs locally and Plaintiff cannot afford to retire at her age. (Compl. ¶¶ 46-47).

## STANDARD OF REVIEW

"To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that

a Defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "When ruling on such a motion, a judge must accept as true all of the factual allegations contained in the complaint." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012) (internal quotation marks and citations omitted).

## ARGUMENT

### I. Plaintiff's Breach of Contract Claim Should be Transferred to the Proper Venue

Defendant first argues that Plaintiff's Breach of Contract claim should be dismissed based upon the arbitration clause in Plaintiff's Employment Agreement. Plaintiff acknowledges that the Employment Agreement does contain an arbitration provision requiring the parties to arbitrate breaches of the Employment Agreement in Baltimore County, Maryland. (Compl., Ex. A). However, Plaintiff's Breach of Contract claim should be transferred to a proper forum in Maryland rather than dismissed.

Courts must apply a forum selection clause contained in an arbitration agreement and "if a court orders arbitration, the arbitration must be held in the same district as the court." *Elox Corp. v. Colt Indus., Inc.,* No. 90-2456, 952 F.2d 395 (table), 1991 WL 263127, at *2 (4th Cir. Dec. 16, 1991). While a district court cannot compel arbitration in a different state, when the parties have agreed to an enforceable forum selection clause, courts "should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine Construction Co., Inc., v. U.S. Dist. Court for the Western District of Texas,* 134 S. Ct. 568, 581 (2013); *Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co.,* 628 F. Supp. 2d 674, 685 (E.D. Va. 2009). When confronted with this issue, courts have the discretion to transfer venue where such transfer would be "in the interest of justice" and for the convenience of the litigants and witnesses. *Am. Int'l Specialty Lines Ins. Co.,* 628 F.

4

Supp. 2d at 685. As the parties here agreed to venue in Maryland for claims arising out of the Employment Agreement and Defendant is a Maryland corporation, it would be "in the interest of justice" to transfer the Breach of Contract claim to an appropriate forum in Maryland. *Id.*

Accordingly, Defendant's Motion to Dismiss Count I Breach of Contract should be denied, and Plaintiff's Breach of Contract claim should be transferred to an appropriate forum, the United States District Court for the District of Maryland.

### II. **Plaintiff's Whistleblower Protection Law Claim, Va. Code § 40.1-27.3, Is Not Time-Barred.**

The Virginia Whistleblower Protection Law prohibits employers from taking any retaliatory action against an employee who "in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law enforcement official." Va. Code § 40.1-27.3. Claims under this statute are subject to a one-year statute of limitations. *Id.* The Supreme Court of Virginia has not ruled on when a cause of action under the Virginia Whistleblower Protection Law accrues.

Defendant argues that Plaintiff's claims are barred by the one-year statute of limitations period because Plaintiff received the notice that her employment would be terminated effective February 27, 2022 on August 30, 2021 and Plaintiff filed the present action on December 5, 2022. Surprisingly, neither of the cases cited by Defendant in support of its argument that Plaintiff's Virginia Whistleblower Protection Law claim is time barred involve retaliation claims. First, *Kiser v. A.W. Chesteron Co.*, 285 Va. 12 (2013) involved the Supreme Court of Virginia's interpretation of Va. Code § 8.01-249, the section of the Code of Virginia dealing with the accrual of certain personal actions, and involved a mesothelioma case. The Virginia Whistleblower Protection Law is not even subject to Va. Code § 8.01-249 because "[e]very action for which a limitation period

is prescribed by law must be commenced within the period prescribed in this chapter *unless otherwise specifically provided in this Code*." *See* Va. Code § 8.01-228. (Emphasis added).

The Supreme Court case cited in Defendant's brief, *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) is also distinguishable from the case at bar. First, it involved national origin discrimination claims under Title VII of the Civil Rights Act and 42 U.S.C. § 1981, federal laws that are not at issue in this case. *Id.* at 250. Second, *Ricks* is further inapposite to Plaintiff's case because it does not even involve retaliation claims. *Id.*

Indeed, while the notice of termination Plaintiff received is certainly a retaliatory action taken by the Defendant in violation of the Virginia Whistleblower Protection Law, it is not the only retaliatory action alleged in Plaintiff's Complaint.

In reading the plain language of the Virginia Whistleblower Protection Law, Va. Code § 40.1-27.3 provides a separate cause of action for *each* retaliatory action an employer takes against a protected employee. In interpreting statutes, courts are to determine the Virginia General Assembly's intent from "the plain and natural meaning of the words used. *Hoffman Fam., L.L.C. v. City of Alexandria,* 272 Va. 274, 284 (2006). Additionally, "[t]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction." *City of Charlottesville v. Payne,* 299 Va. 515, 527 (2021) (quoting *Vollin v. Arlington Cnty. Electoral Bd.,* 216 Va. 674, 679 (1976)). Va. Code § 40.1-27.3 specifically mandates that employers "shall not discharge, discipline, threaten, discriminate against, or penalize an employee, *or* take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment." *Id.* (Emphasis added). This language clearly shows that (1) the threat of termination and (2) actual termination are two distinct activities under the statute that could be actionable.

In the present case, Plaintiff experienced two adverse actions prohibited by Va. Code § 40.1-273. First, Defendant threatened to end her employment by a date certain in the August 30, 2021 notice. (Compl. ¶ 37). Second, Defendant actually terminated Plaintiff's employment on February 27, 2022. (Compl. ¶ 38). As this Complaint was filed on December 5, 2022, Plaintiff's claim that she was terminated in retaliation for her report that Defendant's treatment of her violated equal employment opportunity laws was clearly brought within the statute of limitations period. Accordingly, Defendant's Motion to Dismiss Count II violation of the Virginia Whistleblower Protection Law should be denied.

### III. **Plaintiff's Defamation Per Se Claim Is Not Time-Barred.**

Defendant first argues that Maryland law, not Virginia law should apply to Plaintiff's Defamation Per Se claim. Defendant correctly points out that Virginia applies the *lex loci delicti* rule that the law of the "place of the wrong" governs in defamation actions. *PBM Products, LLC. v. Mead Johnson Nutrition Co.,* 678 F. Supp. 2d 390 (E.D. Va. 2009). However, "it remains 'far from clear' how the Supreme Court of Virginia would apply *lex loci* in 'situations where [ ] defamatory content is 'published' in multiple jurisdictions, such as on a national television broadcast or... a website that can be accessed worldwide.'" *Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 668-669 (E.D. Va. 2019) (quoting *Kylin Network (Beijing) Movie & Culture Media Co. Ltd. v. Fidlow*, 2017 WL 2385343, at *3 n.2 (E.D. Va. June 1, 2017)).

As pointed out in *Gilmore v. Jones, et al.,* 370 F. Supp. 3d 630, 665 (W.D. Va. 2019), a traditional application of the *lex loci delicti* rule assumes that a statement is published in one geographic area, but publishing a statement online creates instantaneous publications across multiple states. Virginia courts additionally have not yet settled whether "publication" online occurs in the state where an individual person uploads the material, the state where the media

platform maintains its headquarters, the state where the websites' servers are located, or the state where the online content is actually viewed by third parties. *Id.* Given this uncertainty, courts like the Court in *Gilmore* have defined the "place of the wrong" as the place where the Plaintiff was primarily injured. *Id.* at 666.

Here, the Defendant argues that this Court should infer that the statement was published in Maryland because Defendant's Maryland office directed the facilitation of Plaintiff's current and former patients and the website directed inquiries to Defendant's Maryland office; however, at this juncture, we simply do not know where the statement was published. While Defendant is a Maryland corporation, it maintains multiple offices across eleven different states and an office outside of the United States. Further, current or prospective patients or other members of the medical community from any number of states could view the defamatory statement online. Due to this complexity, the most logical application of the *lex loci delicti* rule is to apply substantive Virginia law, as Plaintiff is a Virginia resident, Plaintiff worked in Virginia, and Plaintiff was primarily injured in Virginia as "Defendant's false statement that Plaintiff retired has prevented her from getting other jobs *locally*." (Compl. ¶ 46). (Emphasis added.) Thus, Virginia law should apply.

Defendant next argues that Plaintiff's Defamation Per Se claim was brought outside of the one-year statute of limitations period.[1] Defendant relies on the "single publication rule," which "permits only one cause of action to be maintained for any single publication, even if heard or read by two or more third persons." *Lokhova v. Halper,* 995 F.3d 134, 142 (4th Cir. 2021) (quoting *Katz v. Odin, Feldman & Pittleman, P.C.,* 332 F. Supp. 2d 909, 918 (E.D. Va. 2004)). As noted by the

---

[1] While Defendant applies Maryland law to its statute of limitations argument, both Maryland and Virginia apply a one-year statute of limitations period to defamation claims. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-105; Va. Code § 8.01-247.1.

Fourth Circuit, the Virginia Supreme Court has not established whether or not Virginia law would follow this rule. *Id.* Even assuming the Virginia Supreme Court would apply the single publication rule to statements posted on the internet, a statement on a website is considered republished for statute of limitations purposes where changes are made to the already published material or where additional content has been added to the published website. *Id.* at 143. Whether or not Defendant has made changes to the webpage containing the defamatory statement at issue is a question of fact which is not appropriate to resolve on a motion to dismiss. *See T.G. Slater & Son, Inc. v. Donald P and Patricia A. Brennan LLC,* 385 F. 3d. 836, 842 (4th Cir. 2004).

Accordingly, Defendant's Motion to Dismiss Count III Defamation Per Se should be denied.

## **CONCLUSION**

For the forgoing reasons, Plaintiff Sunita Kulshrestha, M.D. respectfully requests that the Court deny Defendant's Partial Motion to Dismiss, enter an order transferring Count I (Breach of Contract) to the U.S. District Court for the District of Maryland, and grant Plaintiff such other and further relief as the Court deems necessary and proper.

    Respectfully Submitted,
    By Counsel:

    */s/ Maria E. Stickrath*
    Broderick C. Dunn, Esq. (VSB #74847)
    Maria E. Stickrath, Esq. (VSB #96191)
    Cook Craig & Francuzenko, PLLC
    3050 Chain Bridge Road, Suite 200
    Fairfax, VA 22030
    Phone (703) 865-7480
    Fax (703) 434-3510
    bdunn@cookcraig.com
    mstickrath@cookcraig.com
    *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, this the 1st day of February, 2023 which will notify the following:

Nigel Wilkinson
10701 Parkridge Blvd., Ste 300
Reston, Virginia
(703) 483-8300 (Phone)
(703) 483-8301 (Facsimile)
Nigel.Wilkinson@jacksonlewis.com

        /s/ Maria E. Stickrath
Broderick C. Dunn, Esq. (VSB #74847)
Maria E. Stickrath, Esq. (VSB #96191)
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
bdunn@cookcraig.com
mstickrath@cookcraig.com
*Counsel for Plaintiff*