IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SUNITA KULSHRESTHA, M.D., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Civil Action No. 1:23-CV-00042-TSE-IDD <br> ) |
| SHADY GROVE REPRODUCTIVE <br> SCIENCE CENTER, P.C., | ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT II

NOW COMES the plaintiff, Sunita Kulshrestha, M.D. ("Plaintiff" or "Dr. Kulshrestha"), by and through her undersigned counsel, pursuant to the Court's March 6, 2023 Order (Dkt. No. 11), and for her Supplemental Memorandum in Opposition to the defendant, Shady Grove Reproductive Science Center, P.C. ("Defendant" or "Shady Grove")'s, Motion to Dismiss Count II Violation of the Virginia Whistleblower Protection Law, Va. Code § 40.1-27.3 (the "VWPL"), states as follows:

### BACKGROUND

Plaintiff, who is a board-certified physician in the field of obstetrics and gynecology, was approached by Defendant in 2013 to recruit her to join Shady Grove Fertility ("SGF"). (Compl. ¶ 8-10). Plaintiff and Defendant entered into a Physician Employment Agreement (the "Employment Agreement") on January 15, 2014. (Compl. ¶ 14). Pursuant to Section 9 of the Employment Agreement, the Agreement had an initial term of six (6) months, but "shall be extended

1

automatically each year, unless 180 days prior notice not to renew is given by either party, for a period of four (4) years, on the same terms and conditions…" (Compl. ¶ 17).

In August of 2021, Plaintiff requested that she be able to do telemedicine appointments from her home in Virginia for a short period of time due to her elderly mother's declining health and the ongoing pandemic. (Compl. ¶ 30). In addition to caring for her mother, Plaintiff was also caring for her elderly mother-in-law, as well as taking care of a toddler. On August 23, 2021, Plaintiff had a zoom call with Defendant's Regional Executive Director, Amy Davis, as well as other attendees, where this request was discussed. (Compl. ¶ 31). When Plaintiff asked about taking FMLA leave, Ms. Davis expressed concern that Plaintiff was "doing three full-time jobs at once…mom to a fifteen-month-old, caregiver to [her] mother, and full-time physician." (Compl. ¶ 33). Plaintiff then asked Ms. Davis if she was being treated differently on the basis of her gender and caregiver status, which would be in violation of state, local, and federal employment laws. (Compl. ¶ 34).

On August 30, 2021, one week after Plaintiff engaged in protected activity by seeking FMLA leave and by reporting that Defendant's treatment of her violated state, local, and federal equal employment opportunity laws, Ms. Davis and the head of human resources for Defendant's management company, Randy Ammons, notified Plaintiff that Defendant would be terminating her employment on February 27, 2022. (Compl. ¶¶ 35-36).

## **STANDARD OF REVIEW**

"To survive a Motion to Dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that

a Defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "When ruling on such a motion, a judge must accept as true all of the factual allegations contained in the complaint." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 566 U.S. 30 (2012) (internal quotation marks and citations omitted).

## ARGUMENT

### I. Plaintiff's Whistleblower Protection Law Claim, Va. Code § 40.1-27.3, Is Not Time-Barred.

The Virginia General Assembly passed the VWPL in 2020 to prohibit employers from taking any retaliatory action against an employee who "in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law enforcement official." Va. Code § 40.1-27.3. It took effect on July 1, 2020. Given the newness of this statute and the resulting dearth of case law, the Virginia Supreme Court has yet to issue any opinion interpreting it.

The VWPL has a much broader application than preexisting Federal whistleblower statutes. As explained in a blog post published by two of counsel for Shady Grove's law partners at Jackson Lewis:

> The difference between the new Virginia law and many existing whistleblower laws is the broad scope of protected activity. Most federal whistleblower statutes limit protected activity to complaints about particular alleged unlawful conduct relevant to those statutes' policy aims. Under the False Claims Act, for example, protected activity is tied to complaints about alleged government fraud. Securities and Exchange Commission whistleblowers must complain about purported shareholder fraud at publicly traded companies. IRS whistleblowers must complain about alleged tax fraud. The Virginia law appears to have *no such tether*. Any employee who complains about any perceived violation of any federal or state law to any supervisor, government body, or law enforcement official would be protected and have a potentially viable claim *should they face nearly any form of reprisal*.

3

Matthew Nieman and Jeremy Schneider, *Virginia Enacts Comprehensive Whistleblower Protection,* Jackson Lewis (March 8, 2023, 11:00 AM), https://www.jacksonlewis.com/publication/virginia-enacts-comprehensive-whistleblower-protection. (Emphasis Added).

While Defendant argues that the principles outlined in *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) should apply to the VWPL, as noted in the above quoted article, Va. Code § 40.1-27.3 is far broader than the existing federal statutes. Further, many courts have declined to apply *Ricks* to similar state law claims. *See Jones v. Honeywell Int. Inc.,* 295 F. Supp. 2d 652, 667 (M.D. La. 2003) (finding that the plaintiff's "discharge was the injury, not a consequence of the injury" in interpreting Louisiana retaliation claim); *Vollemans v. Town of Wallingford,* 103 Conn. App. 188 (2007) (declining to apply *Ricks* to state law claim where Connecticut had a strong policy of avoiding dismissal of meritorious claims due to late filings and the remedial nature of the antidiscrimination statutes.); *Haas v. Lockheed Martin Corp.,* 396 Md. 469 (2007) (declining to apply *Ricks* to state law claim due to remedial nature of statute and to prevent employers from using long notice periods to deter employees from filing discharge claims out of fear of being fired earlier than thought.); *Holmin v. TRW, Inc.,* 330 N.J. Super. 30, 46 (2000) (declining to apply *Ricks,* noting "until an employee is actually terminated, a 'seemingly final decision' may well be reconsidered and perhaps reversed.").

The Virginia Supreme Court has never applied *Ricks* to any Virginia state law claim.[1] Specifically, prior to the enactment of the VWPL, an employee in Plaintiff's situation's most closely related claim under state law would have been a claim for wrongful termination in violation

---

[1] The Virginia Supreme Court does cite to *Ricks* in *Board of Sup'rs of Fairfax Cnty v. Thompson Assocs.,* 240 Va. 133 (1990); however, in that case, the Court was interpreting the statute of limitations under 42 U.S.C. § 1983 and § 1988.

of public policy, also known as a "*Bowman* claim." *See Bowman v. State Bank of Keysville,* 331 S.E. 2d 797 (1985). The Virginia Supreme Court never applied the logic of *Ricks* to a *Bowman* claim, or any other employment-related case.

Counsel for Plaintiff is only aware of one Virginia Circuit Court case involving this issue. Counsel for Defendant here made similar arguments in *Hollis v. Ingleside Emergency Group, LLC et al,* CL22-2102 (Henrico Circuit Court) in a plea in bar of the statute of limitations to a VWPL claim. The defendant in that case's Memorandum in Support of Plea in Bar is attached hereto as **Exhibit A.** In that case, the plaintiff was a doctor who had entered into an employment agreement with the defendants to provide emergency medical services at two hospitals. (Exhibit A). The plaintiff alleged that the defendants had directed her to upcharge certain services to "critical care" even if they did not meet that definition, and she reported to the defendants in 2020 and early 2021 that she would not do this. (Exhibit A). In March of 2021, the plaintiff noticed that she had not been scheduled to work for the month of April and attempted reach out for clarification, but the defendants never followed up with her. (Exhibit A). Ultimately, the plaintiff was never put back on the schedule and she filed suit in April of 2022. (Exhibit A).

In their plea in bar, the defendants made identical arguments to the arguments made here: that *Ricks* should apply to the VWPL and that the plaintiff's cause of action accrued on the date she was notified that she had not been placed on the schedule for April. (Exhibit A). The plaintiff argued in opposition that the "harm" which triggered the running of the statute of limitations did not occur until April when she was not placed on the schedule. The Plaintiff's Brief in Opposition is attached hereto as **Exhibit B.** The plaintiff argued that, at the time the plaintiff realized she had not been put on the schedule, she had not suffered any harm because she was still working, still getting paid, and the defendants had time to change their minds and place her back on the schedule.

(Exhibit B). The "harm" occurred when she was no longer scheduled to provide services to the defendants in April of 2021. The Henrico Circuit Court, in an order dated March 1, 2023, sided with the plaintiff and denied the defendants' plea in bar. That order is attached hereto as **Exhibit C.**

In the instant case, Plaintiff experienced two retaliatory acts by her employer after she reported Defendant's violations of state, local, and federal employment laws: (1) Plaintiff was given a notice that her employment would be terminated, and (2) Plaintiff was actually terminated on February 27, 2022. There is no basis in Virginia precedent to establish that Plaintiff had to bring this action before her actual termination occurred. Much like the plaintiff in *Hollis,* Plaintiff here was still working after she received the notice of termination, she was still being paid, and the Defendant had months to reverse their decision. Plaintiff did not suffer a real, quantifiable "harm" until her actual termination in February of 2022.

Comparing the VWPL to far narrower federal discrimination statutes is essentially the same as comparing apples to oranges due to the breadth of this new statute. Additionally, while the Virginia Supreme Court has yet to decide when the statute of limitations begins to accrue for claims under Va. Code § 40.1-27.3, given that the Virginia Supreme Court has never sought to apply *Ricks* to *any* Virginia claim in the last 43 years since *Ricks* was decided, there is no indication that the Virginia Supreme Court would suddenly adopt that logic now. Because Plaintiff was terminated on February 27, 2022, and this action was filed on December 5, 2022, Plaintiff's VWPL claim is timely and, accordingly, Defendant's Motion to Dismiss Count II violation of the Virginia Whistleblower Protection Law should be denied.

**II.     In the Alternative, the Court Should Certify the Question to the Supreme Court of Virginia.**

6

If the Court is not inclined to rule on how the Virginia Supreme Court would interpret the statute of limitations provisions in the VWPL, then Plaintiff would ask the Court, in the alternative to certify the following question to the Virginia Supreme Court: When does the statute of limitations accrue for a claim under Va. Code § 40.1-27.3?

Va. R. Sup. Ct. 5:40 gives the Virginia Supreme Court the discretionary power to answer questions of law certified to it by a United States District Court where such question is determinative in any proceeding before the certifying court and where there is no Virginia controlling precedent. In the instant case, resolution of when the statute of limitations begins to accrue under a VWPL claim is determinative as to whether Plaintiff's Count III is time-barred. Further, there is no controlling precedent from the Supreme Court of Virginia addressing this issue. To resolve this undecided question of law, Plaintiff respectfully requests that the Court certify the question to the Supreme Court of Virginia in the event the Court declines to rule on the issue. Plaintiff is filing a Motion for Certification contemporaneously with this Memorandum.

## **CONCLUSION**

For the forgoing reasons, Plaintiff Sunita Kulshrestha, M.D. respectfully requests that the Court deny Defendant's Motion to Dismiss Count II and grant Plaintiff such other and further relief as the Court deems necessary and proper.

Respectfully Submitted,
By Counsel:

_/s/ Maria E. Stickrath_
Broderick C. Dunn, Esq. (VSB #74847)
Maria E. Stickrath, Esq. (VSB #96191)
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
bdunn@cookcraig.com
mstickrath@cookcraig.com
*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF system, this the 10th day of March, 2023 which will notify the following:

Nigel Wilkinson
Felicia Marsh
10701 Parkridge Blvd., Ste 300
Reston, Virginia
(703) 483-8300 (Phone)
(703) 483-8301 (Facsimile)
Nigel.Wilkinson@jacksonlewis.com
Felicia.Marsh@jacksonlewis.com

        */s/ Maria E. Stickrath*
        Broderick C. Dunn, Esq. (VSB #74847)
        Maria E. Stickrath, Esq. (VSB #96191)
        Cook Craig & Francuzenko, PLLC
        3050 Chain Bridge Road, Suite 200
        Fairfax, VA 22030
        Phone (703) 865-7480
        Fax (703) 434-3510
        bdunn@cookcraig.com
        mstickrath@cookcraig.com
        *Counsel for Plaintiff*