**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **SUNITA KULSHRESTHA, M.D.,** ) | |
|     **Plaintiff,** ) | |
| ) | |
|     v. ) | |
| ) | Case No. 1:23-cv-42 |
| **SHADY GROVE REPRODUCTIVE** ) | |
| **SCIENCE CENTER, P.C.,** ) | |
|     **Defendant.** ) | |

**MEMORANDUM OPINION**

In this employment dispute, Plaintiff Sunita Kulshrestha ("Plaintiff") has sued her former employer, Defendant Shady Grove Reproductive Center ("Defendant"). Plaintiff alleges four counts in the Complaint:

    (i)    Breach of contract;

    (ii)    Retaliation in violation of the Virginia Whistleblower Protection Law ("VWPL"), Va. Code § 40.1-27.3;

    (iii)    Defamation per se; and

    (iv)    Retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

In response, Defendant filed a Motion to Dismiss Counts I, II, and III, which was fully briefed and argued. Following argument, the Motion to Dismiss was granted in part and denied in part. *See* Order Issued March 6, 2023, Dkt. 11 at 2–3. Specifically, Defendant's motion was granted with respect to Count I, which was dismissed without prejudice to allow the parties to initiate arbitration in Maryland pursuant to a forum-selection and arbitration clause in the parties' contract. Defendant's Motion to Dismiss was also granted with respect to Count III, which was dismissed without prejudice and Plaintiff was granted leave to amend her Complaint with respect

1

to her defamation allegations in Count III. Plaintiff then filed an Amended Complaint with respect to Count III, and Defendant filed another Motion to Dismiss Count III, which will be argued on April 21, 2023. *See* Dkts. 13, 17, 19.

At issue now is Count II of the Complaint, which alleges retaliation in violation of the VWPL. In the Motion to Dismiss, Defendant argues that Count II should be dismissed as barred by the VWPL's one-year statute of limitations. Following oral argument, supplemental briefing was ordered and received addressing the statute of limitations issue. More recently, Plaintiff also filed a Motion to Certify a Question of Law to the Supreme Court of Virginia, arguing that the novel issue of when a cause of action accrues for a claim under the VWPL should be certified to the Supreme Court of Virginia. *See* Pl.'s Mot. to Certify Question to State Court, Dkt. 14. Defendant then responded to Plaintiff's Motion to Certify on March 24, 2023. *See* Def.'s Resp. to Pl.'s Mot. to Certify, Dkt. 20. Thus, both Defendant's Motion to Dismiss Count II and Plaintiff's Motion to Certify are now ripe for disposition. For the reasons that follow, Defendant's Motion to Dismiss Count II must be granted, and Plaintiff's Motion to Certify must be denied.

## I.

The facts alleged in Plaintiff's Complaint in support of Count II are assumed true solely for the purposes of resolving Defendant's Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those facts may be summarized chronologically as follows.

- Plaintiff Sunita Kulshrestha is a medical doctor who is board certified in obstetrics and gynecology with a specialty in reproductive endocrinology and infertility.

- Defendant Shady Grove Reproductive Science Center, P.C. is a large medical practice which specializes in fertility treatments.

- In 2013, Defendant approached Plaintiff to recruit her to join Defendant's medical practice. Defendant promised Plaintiff that she would become a partner and make $1,000,000 per year.

- Plaintiff joined Defendant's practice in 2014 and initially worked at Defendant's Pennsylvania offices. In 2017, Plaintiff moved back to Northern Virginia and began seeing patients at Defendant's Maryland and Virginia offices.

- In March 2018, Plaintiff's husband died unexpectedly, leaving Plaintiff to care for her elderly parents and in-laws. In 2019 and 2020, Plaintiff's father and father-in-law both died. In 2020, Plaintiff gave birth to her first child. Throughout these events, Plaintiff maintained a full workload and achieved high patient satisfaction scores.

- In August 2021, Plaintiff's mother became ill and required Plaintiff's care. Plaintiff asked Defendant to allow her to conduct telemedicine appointments because of the COVID-19 pandemic and her mother's health challenges.

- On August 23, 2021, Plaintiff had a Zoom call with Amy Davis, Defendant's Regional Executive Director. During the call, Plaintiff requested to work from home for two weeks in order to care for her mother. Plaintiff also asked about engaging in FMLA leave. In response, Ms. Davis expressed concern that Plaintiff was "doing three full-time jobs at once . . . mom to a fifteen-month-old, caregiver to [Plaintiff's] mother, and full-time physician." In response, Plaintiff asked if Ms. Davis was treating Plaintiff differently based on Plaintiff's gender and caregiver status in violation of state and federal employment law.

- On August 30, 2021, Ms. Davis and Defendant's head of human resources notified Plaintiff that Defendant was terminating Plaintiff's employment on February 27, 2022 because "it was not a good fit." Plaintiff received a written Notice of Termination on August 30, 2021, which stated that "notice is hereby provided that your employment with Shady Grove . . . will terminate on February 27, 2022."

Compl., Dkt. 1-1 at 4–8.

Count II of Plaintiff's Complaint, the only claim at issue here, alleges violation of the VWPL and states that "Plaintiff engaged in protected activity in August of 2021 when she sought to take leave under FMLA . . . and when she reported that Defendant's treatment of her violated state, local, and federal equal employment opportunity laws." *Id.* at ¶ 52. According to Plaintiff, her termination after reporting that Defendant treated her differently based on her caregiver status constituted retaliation in violation of the VWPL. In response, Defendant argues that Count

3

II must be dismissed as barred by the VWPL's one-year statute of limitations because Plaintiff filed this action on December 5, 2022, over a year after Plaintiff received her Notice of Termination on August 30, 2021. For the reasons stated below, Defendant persuasively argues that Count II is time-barred and Count II must be dismissed.

## II.

Resolution of Defendant's Motion to Dismiss Count II requires determining when a cause of action accrues under the VWPL. Here, the parties dispute whether Plaintiff's cause of action accrued when she received her Notice of Termination on August 30, 2021 or when she stopped working on February 27, 2022. Because Plaintiff filed her Complaint on December 5, 2022, her VWPL claim is timely only if it accrued on or after December 5, 2021. This means Plaintiff's claim is barred if it accrued when she received her Notice of Termination on August 30, 2021. Because the VWPL is a relatively new statute which took effect on July 1, 2020, neither the Supreme Court of Virginia nor the Court of Appeals of Virginia has yet issued any decision interpreting the VWPL,[1] and no reported case from any Virginia court has directly addressed when the VWPL statute of limitations begins to run.[2]

---

[1] The Court of Appeals of Virginia has issued one unpublished opinion citing the VWPL, but in that case the Court of Appeals did not reach the merits of the plaintiff's VWPL arguments because the appeal was dismissed for failure to comply with procedural rules. *See Morris v. Elias*, 2022 WL 16823535, at *2–3 (Va. Ct. App. Nov. 9, 2022).

[2] Only one lower court has issued a written opinion regarding the VWPL's statute of limitations, but it is unpublished and does not address when the statute of limitations accrues. *See Vinayagam v. Malpani*, 2022 WL 4131197, at *(E.D. Va. July 29, 2022) (dismissing VWPL claim as time-barred where complaint by *pro se* plaintiff was mailed but not filed within one year of the alleged retaliatory act). Additionally, in a case in the Circuit Court for Henrico County, the court denied a defendant's plea in bar where the defendant argued that the plaintiff's VWPL claim was barred by the statute of limitations. *See Hollis v. Ingleside Emergency Group, LLC*, CL22-2102, Order Issued March 1, 2023 (Henrico Circuit Court). There, the defendant made arguments nearly identical to those asserted here, which arguments the Henrico Circuit Court rejected. But the court in *Hollis* issued only a one paragraph, unpublished, conclusory order that did not explain any of the reasoning for denying the defendant's plea in bar. *See* Ex. C to Pl.'s Suppl. Br., Dkt. 12-3 at 1 (attaching as an exhibit the briefs and order in *Hollis*). *Hollis* is therefore unhelpful and unpersuasive here.

Because this case presents a question of first impression under in Virginia law, this Court must predict how the Supreme Court of Virginia would rule were it presented with the same issue. In other words, "[w]here there is no case law from the forum state which is directly on point, the district court attempts to do as the state court would do if confronted with the same fact pattern." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). Although no court has directly addressed when the statute of limitations begins to run under the VWPL, other state and federal precedent interpreting similar employment statutes indicates that the statute of limitations for Plaintiff's VWPL claim began to run when Plaintiff received her written Notice of Termination, not on the later date when her employment actually ended.

First, although the Supreme Court of Virginia has not decided any case regarding the VWPL's statute of limitations, other settled Supreme Court of Virginia precedent involving the accrual of causes of actions provides helpful and persuasive guidance on the question presented here. The Supreme Court of Virginia has instructed that in determining when a cause of action accrues, a court must first "begin with the language of the statute at issue." *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 24 (2013). Thus, analysis of when a cause of action accrues under the VWPL properly begins with the terms of the statute, which states:

> An employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee . . . reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official . . .

Va. Code § 40.1-27.3(A). The statute also includes a one-year limitations period, providing that "[a] person who alleges a violation of this section may bring a civil action in a court of competent jurisdiction *within one year of the employer's prohibited retaliatory action*." *Id.* § 40.1-27.3(C) (emphasis added). The plain text of the statute therefore makes clear that the relevant focus for beginning the one-year statute of limitations period is the employer's

5

"retaliatory action," not the later consequences of that action. *Id.* Thus, Plaintiff's cause of action accrued, and the one-year statute of limitations began to run, when Plaintiff received her Notice of Termination on August 30, 2021, because at that point Defendant committed a "prohibited retaliatory action" against her as required by the statute. *Id.*[3]

This conclusion comports with the Supreme Court of Virginia's interpretation of when a cause of action accrues under other statutes. The Supreme Court of Virginia has repeatedly held that a cause of action accrues, and the statute of limitations begins to run, "when any injury, though slight, is sustained as the consequence of an alleged wrong, despite the fact that greater damage from the same wrong may be sustained at a later date." *Kiser*, 285 Va. at 22 (quoting *Lo v. Burke*, 249 Va. 311, 317 (1995)). For example, in *Kearns v. Wells Fargo Bank*, 296 Va. 146 (2018), the Supreme Court of Virginia explained that the "general rule" which is "applicable to all claims" is that "[a]ny amount of damages, 'however slight,' triggers the accrual of the cause of action." *Id.* at 157, 159. For this reason, "it is immaterial that all the damages resulting from the injury do not occur at the time of the injury." *Id.* (quoting *Van Dam v. Gay*, 280 Va. 457, 482 (2010)). This precedent makes clear that under the VWPL, a cause of action accrues, and the statute of limitations begins to run, when the alleged retaliatory action occurs, even if the consequences of the retaliation are not felt until later. Thus, Plaintiff's cause of action accrued

---

[3] Plaintiff also argues that her VWPL claim is not barred because she experienced two retaliatory actions, each of which could be separately actionable: the *threat* of termination reflected in the August 30, 2021 Notice of Termination and Plaintiff's ceasing to work on February 27, 2022. But this argument fails because the two events do not in fact constitute two adverse actions; instead, Plaintiff's final date of employment on February 27, 2022 was the ultimate *consequence* of her August 30, 2021 Notice of Termination. Indeed, the Notice of Termination, which Plaintiff attached to her Complaint, states that "pursuant to your Employment Agreement . . . notice is hereby provided that your employment with [Defendant] will terminate on February 27, 2022." Ex. B to Compl., Dkt. 1-1 at 29. This makes clear that the alleged retaliatory action occurred on August 30, 2021 when Plaintiff received the termination letter. It is irrelevant for statute of limitations purposes that Plaintiff did not suffer the ultimate consequence of the Notice of Termination until she ceased working for Defendant on February 27, 2022. *See, e.g.*, *Shipman v. Kruck*, 267 Va. 495, 503 (2004) ("The running of the limitations period will not be tolled by the fact that the actual or substantial damages did not occur until a later date.").

when she received her Notice of Termination on August 30, 2021, and the VWPL's statute of limitations is not extended by the fact that Plaintiff later suffered the full consequences of her termination when she ceased working for Defendant in February 2022. As the Supreme Court of Virginia put this point, "[t]he general observation, applicable to all claims, [is] that the running of the statute is not postponed by the fact that the *actual* or *substantial* damages do not occur until a later date." *Kearns*, 296 Va. at 159.

Federal courts have also reached the same result in cases interpreting claims brought under federal employment statutes. In this respect, the Supreme Court has repeatedly held that a cause of action for retaliation under federal antidiscrimination law accrues on the day the "discrete retaliatory or discriminatory act . . . happened," *not* on the day when the plaintiff later experiences the full consequences of the decision. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Perhaps the best known example of this accrual rule appears in *Delaware State College v. Ricks*, where the Supreme Court held that the statute of limitations for a professor's retaliation claim began to run when the college formally voted to deny the professor's tenure, *not* when the professor's teaching position later actually expired. *Id.* As the Supreme Court explained,

> the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to [the plaintiff]. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later.

*Id.*; *see also Chardon v. Fernandez*, 454 U.S. 6, 7–8 (1981) (limitations period for employment discrimination claim began to run when employees received advance notice that their employment would be terminated in a few weeks, not when their employment actually ended).

To the same effect, the Fourth Circuit has consistently concluded that under federal employment discrimination law, the "filing period runs from the time at which the employee is

7

informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." *Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982). As the Fourth Circuit has explained in applying the *Ricks* accrual rule, this rule has a strong rationale because it encourages "a potential charging party to raise a discrimination claim before it gets stale, for the sake of a reliable result and a speedy end to any illegal practice that proves out," and it also serves to "protect employers from the burden of defending claims arising from employment decisions that are long past." *E.E.O.C. v. Randstad*, 685 F.3d 433, 444–45 (4th Cir. 2012) (quoting *Ricks*, 449 U.S. at 256–57). Thus, Supreme Court and Fourth Circuit precedent makes clear that "a discriminatory discharge claim accrues when the employee receives notice of the termination, not on the last day of employment." *Smith v. Univ. of Md. Baltimore*, 770 F. App'x 50, 50–51 (4th Cir. 2019) (rejecting employee's argument that the statute of limitations began to run on her "discharge date" and explaining that the claim accrued when the employee "learn[ed] of her impending termination"). Given this long-existing and settled rule in the context of federal employment claims, which also comports with the Supreme Court of Virginia's well-settled general accrual principles, it follows that the Supreme Court of Virginia would apply this accrual rule to the VWPL's statute of limitations.

It is also worth noting that other courts have applied the *Ricks* accrual rule to state whistleblower statutes and concluded that a whistleblower-employee's cause of action for retaliation accrues when the employee receives notice of the termination, not on the date the employee actually stops working. *See Sharma v. District of Columbia*, 65 F. Supp. 3d 108, 118 (D.D.C. 2014) (applying D.C. law); *Hite v. Norfolk Southern Ry. Co.*, 181 F. App'x 514, 517 (6th Cir. 2006) (applying Michigan law). For example, in *Sharma*, the District of D.C. held that a D.C. Whistleblower Protection Act claim "accrues when the employee learns of the

discriminatory act, not when the consequences of the act become painful." *Sharma*, 65 F. Supp. 3d at 118 (internal citations omitted). There, the district court concluded that the statute of limitations began to run when the employee obtained final notice of his termination due to a reduction in force, even though his termination did not actually take effect until later. *Id.* Similarly, the Sixth Circuit in interpreting the Michigan Whistleblower Protection Law explained that "statutes of limitations in cases involving terminations of employment should run from the *initial termination decision*, and are not affected by the pendency of administrative reviews of those decisions." *Hite*, 181 F. App'x at 517 (citing *Ricks*, 449 U.S. at 258). These decisions provide further support that the Supreme Court of Virginia would apply the *Ricks* accrual principle to the VWPL, as other courts interpreting similar whistleblower protection statutes have applied the *Ricks* accrual rule and held that the cause of action accrues when the employee receives notice of her termination.

Seeking to avoid this conclusion, Plaintiff argues that other states construing their state employment statutes have not adopted the Supreme Court's rule in *Ricks* for the accrual of a cause of action under other state employment claims. *See* Pl.'s Suppl. Br., Dkt. 12 at 4 (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735 (Md. 2007); *Vollemans v. Town of Wallingford*, 928 A.2d 586 (Conn. App. Ct. 2007); *Jones v. Honeywell Int'l Inc.*, 295 F. Supp. 2d 652 (M.D. La. 2003); *Holmin v. TRW, Inc.*, 748 A.2d 1141 (N.J. Super. Ct. 2007)). Plaintiff's cases are neither binding nor persuasive. First, in *Haas*, the Court of Appeals of Maryland reasoned that the *Ricks* rule would "frustrate[]" a "conciliation process" required by the Maryland employment statute. *Haas*, 914 A.2d at 751. But *Haas* is distinguishable because the VWPL, unlike the Maryland statute, contains no required conciliation process that would be impacted by applying the well-settled *Ricks* accrual principle. And in *Vollemans*, the Connecticut appellate court relied

9

on the "liberal construction" required for Connecticut fair employment statutes, which is not applicable to this matter. *Vollemans*, 928 A.2d at 605. *Jones* is similarly unpersuasive because there, the Middle District of Louisiana determined that the rule in *Ricks* did not apply to a Louisiana statute which "indicate[d] that [the statute of limitations] only begins running once the plaintiff suffers damages." *Jones*, 295 F. Supp. 2d at 664. In sharp contrast to the Louisiana statute, the VWPL provides that the statute of limitations begins to run *not* when the plaintiff suffers damages, but when the "employer's prohibited retaliatory action" occurs. Va. Code § 40.1-27.3(C). Finally, *Holmin* is inapposite because in that case, the Superior Court of New Jersey considered when a cause of action accrued for fraud. *Holmin*, 748 A.2d at 1145. But Plaintiff here has not alleged any fraud claim against Defendant, and thus *Holmin* is wholly inapposite. In sum, Plaintiff's reliance on the few out-of-state cases cited therefore fails to persuade.

In conclusion, although neither the Supreme Court of Virginia nor the Virginia Court of Appeals has decided the matter, it is clear from settled Virginia precedent and helpful guidance from settled federal precedent that Plaintiff's cause of action under the VWPL accrued when Plaintiff received her Notice of Termination on August 30, 2021. Because Plaintiff did not file her Complaint until over a year later, Defendant's Motion to Dismiss Count II must be granted and Plaintiff's VWPL claim must be dismissed.

**III.**

Plaintiff also argues that, in the alternative to resolving here whether Count II is timely, that question should be certified to the Supreme Court of Virginia. In this respect, the Rules of the Supreme Court of Virginia provide that a federal district court may certify a question of Virginia law to the Supreme Court of Virginia if the question is "determinative in any

proceeding pending before the certifying court and it appears there is no controlling precedent on point in the decisions of [the Supreme Court of Virginia] or the Court of Appeals of Virginia." Rule 5:40, Va. R. Sup. Ct. The decision to certify a question "rests in the sound discretion of the federal court." *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 n.7 (2018). The factors to consider in exercising this discretion are (i) whether the question is determinative of the case; (ii) the imposition certification would have on the time and resources of the Supreme Court of Virginia; (iii) increased costs to the parties that would result from certification; (iv) delay in disposition of the case that would result from certification; and (v) judicial efficiency. *See W. Am. Ins. Co. v. Bank of Isle of Wight*, 673 F. Supp. 760, 764 (E.D. Va. 1987). Finally, the discretion to certify should be "cautiously exercised," and in exercising this discretion, "[a]ll certifying courts should be keenly aware of their obligation not to abdicate their responsibility to decide issues properly before them." *Id.*

Each of these factors counsels against exercising the discretion to certify here. First, the statute of limitations issue is not determinative of the entire proceeding, as other claims exist in the case. Second, certification would involve a substantial imposition on the resources of the Supreme Court of Virginia and would increase costs to the parties because, if certification is ordered, the parties must submit additional briefs to the Supreme Court of Virginia and may be requested to make oral argument. *See* Rule 5:40(g), (h), Va. R. Sup. Ct. All of this would necessarily delay disposition of the case. Finally, judicial efficiency counsels against certification here because the parties have already extensively briefed and argued the issue, and federal courts in Virginia "regularly interpret[] Virginia law" and "decide questions of state law, even if difficult and uncertain, when necessary to render judgment." *Burke v. THOR Motor Coach, Inc.*, 113 F. Supp. 3d 863, 866 (quoting *Legard v. EQT Prod. Co.*, 771 F. Supp. 2d 607, 609

(W.D.Va.2011)). Thus, while certification is certainly appropriate in some circumstances, those circumstances do not exist here.

IV.

In conclusion, Defendant's Motion to Dismiss must be granted with respect to Count II of Plaintiff's Complaint because Plaintiff's VWPL claim is untimely. Count II will be dismissed with prejudice as barred by the statute of limitations. Plaintiff's Motion to Certify the Question to the Supreme Court of Virginia must also be denied.

An appropriate Order will issue.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

Alexandria, Virginia
April 6, 2023

_____
T. S. Ellis, III
United States District Judge

12